500 P.2d 841

The STATE of Idaho ex rel. C. Ed FLANDRO et al., Plaintiffs-Appellants,

v.

Frances SEDDON, a widow, et al., Defendants-Respondents.

No. 10942.

Supreme Court of Idaho.

July 28, 1972.

Rehearing Denied Sept. 15, 1972.

Faber F. Tway, Chief Legal Counsel, Anton Hohler, Idaho Dept. of Highways, Boise, for plaintiffs-appellants.

Webb, Pike, Burton & Carlson, Twin Falls, for defendants-respondents.

McFADDEN, Justice.

This is an appeal from an order denying a motion for injunctive relief sought by the Idaho Board of Highway Directors, herein referred to as the board. The board initially brought a condemnation action against Frances Seddon, a widow, Carol Seddon, a single woman and Ray and Mary Williams, husband and wife, defendants. By the condemnation action the board sought fee simple title to a little over an acre of ground necessary for a proposed extension of U. S. Highway 30 in Twin Falls County. The particular tract involved had been owned by the Seddon's who sold it under a contract to the Williams. At the time of these proceedings the Williams had paid the contract out, and they were for all intents and purposes the owners of the property.

The condemned property was the site of a custom slaughter-house operated by the Williams in conjunction with their meat processing plant which was situated in Filer, Idaho. Improvements and structures on the property consisted of the cinder block slaughter-house, an offal room, chutes and corrals, with the customary equipment used in such an operation.

The condemnation action was tried before a jury who found for the defendants and assessed $19,250 as the value of the property sought to be taken. Judgment for that amount was entered on February 20, 1970, with the second judgment and decree of condemnation being entered on March 16, 1970. Possession of the property was given up by the Williams on or about June 2, 1970, following which employees of the State found that the building situated on the property had been stripped of all fixtures. The attorney for the board contacted the defendants' attorney concerning return of the items taken out of the building, and subsequently the board's attorney wrote demanding return of the items. In this letter it was pointed out that title to the building and fixtures passed to the contractor as part of the construction contract on the project. The demand letter brought no results. On January 11, 1971, the board petitioned the trial court for injunctive relief for return of the particular items claimed to be missing and alleged to be worth $2,045.00. The district court entered its order to show cause.

In the order denying the motion for injunctive relief following the hearing on the order to show cause, the trial court found:

"[t]hat neither the pleadings as filed in this action nor the instructions as offered by the parties to this action submitted to the jury for determination the question of condemnation of properties which are the subject of the plaintiff's Motion and Affidavits and that from the pleadings, instructions and verdict in this case it can not be determined, at least by the procedures filed in this action, whether the plaintiff in fact condemned the properties in question in the Motion and Affidavits and whether the jury considered these properties in arriving at their verdict for the taking sought by the plaintiff in its Complaint in condemnation herein and obtained in its Judgments of condemnation herein."

As a part of the record on this appeal is the transcript of the testimony of the witnesses during the trial on the condemnation action. At that trial there was testimony submitted on the valuation of the equipment situated in the building on the property condemned. It is important to note that despite the rather extensive lists of the equipment, neither side attempted to establish that the equipment was in fact affixed to the building or real property. Typical of the testimony offered was that of defendant Williams. During his direct examination he stated that only the cooler and freezer were permanently affixed to the realty. Under cross-examination, Mr. Williams recanted and stated that all the equipment was permanently affixed. He clearly acknowledged that portable property was not the object of the condemnation proceedings.

The board offered testimony of an expert appraisal witness who also fixed valuation of certain of the properties now claimed missing. The board argues by the defendant's own admissions, that the the property allegedly missing was in fact affixed to the realty and valuations were established on it. It asserts that the trial court erred by dismissing the petition for injunctive relief.

In denying relief the trial court stated it was unable to determine whether the jury in arriving at the value of the property condemned had included the value of the alleged "fixtures" in its verdict. Moreover, the initial complaint of the board and the instructions to the jury in the condemnation proceeding merely referred to the property by legal description of the land.

Thus, the sole issue presented is whether a condemnor may take possession of and legal title to equipment alleged to be "fixtures" without proof that the jury considered such equipment in fixing the valuation of the property to be taken. In this action the record reflects only that the parties submitted evidence on the valuation of the so-called "fixtures" without any instructions to the jury that they should segregate between personalty and fixtures and include only those items permanently affixed to the realty in arriving at the valuation of the property taken.

In prior cases this Court has established three general factual tests to be applied in determining whether a particular article is a fixture or whether it remains as a personalty:

"(1) [A]nnexation to the realty, either actual or constructive; (2) adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) intention to make the article a permanent accession to the freehold." Pearson v. Harper, 87 Idaho 245 at 256, 392 P.2d 687 at 693 (1964).

*See* Boise Payette Lumber Co. v. McCormick, 32 Idaho 462, 186 P. 252 (1919); Beebe v. Pioneer Bank and Trust Co., 31 Idaho 385, 201 P. 717 (1921).

Whether an item is a "fixture" and a part of the real property or is still personalty presents a factual issue. Quite properly the board refers to I.C. § 7–711 in arguing that damages assessed in a condemnation action must include the value of the property and all improvements thereon

pertaining to the realty. However, the contention that damages include the value of all improvements does not answer which improvements were in fact valued in this case. I.C. § 7–711 provides that "[t]he court, jury or referee must hear such legal testimony as may be offered by any of the parties * * * and thereupon must ascertain and assess: * * * [t]he value of the property sought to be condemned, and all improvements thereon pertaining to the realty, * * *." Big Lost River Irrigation Dist. v. Zollinger, 83 Idaho 401, 363 P.2d 706 (1961); Hughes v. State, 80 Idaho 286, 328 P.2d 397 (1958). It thus follows that as a prerequisite for a finding of the value of the "improvements" that the judge, jury or referee, as the case may be, must be aware of the existence of such "improvements" or "fixtures" before it can properly ascertain and assess their value. Although the board suggests that the parties and the witnesses assumed that the particular items were "fixtures," this Court cannot accept such an assumption for the same reasons that the district court so clearly stated.

■ Moreover, it is our conclusion that it is incumbent upon a condemnor in a condemnation action to designate clearly, and establish by competent evidence which particular items are claimed as "fixtures," so that upon the entry of the decree no issue can later arise concerning inclusion or exclusion of these items.

■ Although the error assigned did not raise the question of whether the court or the jury in eminent domain proceedings must find which improvements are, in fact, affixed to the real property, we feel compelled to raise this issue which underlies the ultimate resolution of the ownership of certain alleged "fixtures." An eminent domain proceeding is not an ordinary "civil" action wherein the factual issues are submitted to a jury for determination. Historically, eminent domain action was ex parte and inquisitorial in the common law and has not been regarded as a civil remedy. Nichols on Eminent Domain, §§ 1.1–

1.44 (3d rev. ed.). The power of eminent domain arises as an incident to sovereignty of the state with this authority recognized by the state constitution. Idaho Const. art. 1, § 14; Portneuf Irrig. Co., Ltd. v. Budge, 16 Idaho 116, 100 P. 1046 (1909). The procedures for eminent domain actions have been established by the legislature. Idaho Code, Title 7, Ch. 7. Because eminent domain authority arises from an inherent sovereignty of the state to take property for its own use, such proceedings do not come within the scope of Idaho Const. Art. 1, § 7, pertaining to trial by jury. Portneuf Irrig. Co. v. Budge, supra. Although I.C. § 10–105 requires trial by jury of factual issues in enumerated classes of actions, no reference is made therein to eminent domain proceedings. Consequently in eminent domain proceedings the only issue for submission to a jury is the question of the value of the property sought to be taken or the amount of compensation for the taking. I.C. § 7–711. *See* People v. Ricciardi, 23 Cal.2d 390, 144 P.2d 799 (1944); People ex rel. Dept. of Public Works v. Russell, 48 Cal. 2d 189, 309 P.2d 10 (1957). Other factual issues should be resolved by the trial court. This would include the nature of the property sought to be taken, i. e. whether it was personalty or affixed to the realty. In this particular case no real issue over the nature of the property was presented to the trial court by the pleadings or by testimony at trial, and only some months after the judgment and decree were entered did it arise as an issue.

■ In the absence of findings by the district court and in the absence of a proper jury instruction this Court cannot say that implicit in the jury verdict the items at issue were "fixtures" and included in the award. Had the trial court been presented with this issue by pleadings, or in the absence of pleadings had the issue been fully developed at the trial it would have been in a position to make a finding dispositive of the status of the property. Accordingly, when the jury had to determine the value of the property being taken,

its verdict would have necessarily included or excluded such items as found by the court.

The record fails to disclose whether the jury considered the alleged "fixtures" which are the subject of this appeal in arriving at the amount of its award. Under these circumstances the district court was not in error in refusing to grant the injunctive relief. To grant such relief the district court would have had to guess which items were included in the jury's valuation.

The order of the trial court is affirmed. Costs to respondents.

McQUADE, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.